IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**RACHEL HIGGINS, as personal representative of
the ESTATE OF JOHN T. SANCHEZ,**

    **Plaintiff,**

vs.                                                           No. 1:24-cv-0167-MIS-DLM

**BERNALILLO COUNTY BOARD OF
COMMISSIONERS, JASON JONES, in his capacity
as Chief of the Metropolitan Detention Center and in
his individual capacity, STEPHEN GABALDON, in his
capacity as a jailer at the Metropolitan Detention
Center and in his individual capacity,
CORIZON HEALTH OF NEW MEXICO, LLC,
and NATASHA BUSTAMANTE,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Stephen Gabaldon's Amended Motion for Protective Order. (Doc. 108.) Having fully considered the parties' arguments and the relevant law, the Court **grants** the motion.

**I.**     **Procedural History**

According to the Amended Complaint, John Sanchez, a pretrial detainee at the Bernalillo County Metropolitan Detention Center (MDC), "was experiencing withdrawal and detox symptoms." (*See* Doc. 29 at 1 & ¶¶ 12–13, 130.) He became argumentative with other inmates and was taken to medical for a checkup. (*Id.* ¶¶ 16–17.) As corrections officers escorted Sanchez back to his pod, he tripped on his pant leg and fell; as a result, an officer placed him in handcuffs with his hands behind his back and called the Critical Emergency Response Team (CERT) to assist. (*Id.* ¶¶ 17, 19–21.) When Sanchez again tripped on a pant leg, one of the CERT officers—Defendant Stephen Gabaldon—swept Sanchez's legs out from underneath him and slammed his head onto

the concrete floor, breaking his spine and neck and causing a brain bleed. (*Id.* ¶¶ 29–30, 39.) Back at medical, Defendant Natasha Bustamante, a nurse with Defendant Corizon Health of New Mexico LLC, failed to adequately treat Sanchez. (*See id.* ¶¶ 8, 40–41, 46, 50, 54–61.) Instead, she immediately returned him to his cell. (*Id.* ¶ 62.) Within an hour, "Sanchez was found seizing in his cell"; he later died as a result of his injuries. (*See id.* ¶¶ 65, 104, 144.)

Plaintiff Rachel Higgins, personal representative of Sanchez's estate, filed suit under 42 U.S.C. § 1983, the New Mexico Civil Rights Act, and the New Mexico Tort Claims Act for violations of Sanchez's constitutional rights. (Doc. 29.) On October 31, 2024, the Court imposed scheduling deadlines. (*See* Doc. 49.) On July 25, 2025, Higgins and Defendants Bernalillo County Board of Commissioners, Jason Jones, and Stephen Gabaldon (the County Defendants) filed a Notice of Settlement and moved for the appointment of a guardian ad litem. (Docs. 93–94.) Higgins's claims against Corizon and Bustamante remain, and the Court has extended scheduling deadlines for the remaining claims.[1] (*See* Doc. 106.)

On April 18, 2025, Plaintiff served a notice to take Gabaldon's deposition.[2] (*See* Doc. 83.) On April 22, 2025, Higgins served an amended notice, scheduling the deposition for August 28, 2025. (*See* Docs. 84; 109 at 2.) Higgins asserts that "counsel for all parties consented" to this date. (*See* Doc. 109 at 2.) Despite having four months' notice, Gabaldon notified Higgins of his need to reschedule the deposition a mere six days before it was set to occur. (*See* Docs. 108 at 1; 109 at 2.) Gabaldon explains that he may be facing criminal charges stemming from this incident,[3] and he has retained separate criminal legal counsel. (*See* Docs. 108 at 3; 108-A ¶¶ 2, 4.) When Gabriela

---

[1] Higgins has also moved to file a second amended complaint to name a new defendant she alleges is related to Corizon. (*See* Doc. 115.)

[2] Although there is a pending settlement of the claims against Gabaldon, his testimony is necessary for the remaining claims. (*See, e,g.*, Doc. 108 at 3–4.)

[3] Gabaldon did not provide, nor has the Court located, information on any active criminal case pending against him.

Delgadillo, counsel for Gabaldon in this lawsuit, spoke to him "during the week of August 18th, . . . Gabaldon decided it would be in his best interest to have his criminal legal counsel present at the deposition." (Doc. 108 at 4.) Ms. Delgadillo "reached out to [Higgins's] counsel immediately, on August 22nd, to inform him of this development and to request" that the deposition be rescheduled. (*See id.*) Gabaldon asks the Court to grant a protective order, allowing his criminal legal counsel to be present at the deposition "to help him protect his rights under the Fifth Amendment[,]" as "any testimony he provides in this civil matter could potentially be used against him in any criminal proceeding." (*Id.* at 6, 7 (citing *State ex rel. Albuquerque Police Dep't v. One Black 1983 Chevrolet Van, V.I.N. 2GCEG25H1D4121852, N.M. License Plate No. 291-BPN*, 901 P.2d 211, 213 (N.M. Ct. App. 1995)).) Higgins's counsel does not oppose Gabaldon's criminal legal counsel attending the deposition; rather, he seeks "the Court's guidance on the scope of the questions to which Defendant Gabaldon [may] assert his Fifth Amendment privilege." (*See* Doc. 109 at 2–3.) Higgins also seeks an adverse inference jury instruction. (*See id.* at 8.)

**II.    Analysis**

To begin, because Higgins does not oppose Gabaldon's requested relief (*see id.* at 2–3), the Court grants the motion and orders counsel to confer about a new deposition date that Gabaldon's criminal legal counsel can attend. Given that discovery ends October 29, 2025 (*see* Doc. 106), the Court will order counsel to confer and select a new deposition date no later than **September 16, 2025**.[4]

With respect to Higgins's request that the Court provide anticipatory "guidance on the scope of the questions to which" Gabaldon may assert his Fifth Amendment privilege (*see* Doc. 109 at 3), the Court declines to do so at this time. The parties agree that the Fifth Amendment

---

[4] Should Higgins find it necessary to file a motion to compel after Gabaldon's deposition, the Court will expedite briefing.

3

shields a party from answering deposition questions that might elicit information that could be used against the deponent in a criminal prosecution. (*See* Docs. 108 at 5–6; 109 at 5–6.) They also agree that ordinarily, a deponent would attend a deposition, assert the privilege against self-incrimination where appropriate, and the deposing party could thereafter move the Court to compel the deponent to answer more fully. (*See* Docs. 108 at 5–6 (quoting *Gonzales v. Duran*, No. 01-cv-0898 RLP/LFG, 2003 WL 27383580, at *2 (D.N.M. Apr. 21, 2003)); 109 at 4 (quoting *Sec. & Exch. Comm'n v. Pence*, 323 F.R.D. 179, 187 (S.D.N.Y. 2017)).)

Higgins relies on the *Pence* decision to argue that "in certain circumstances, Fifth Amendment privileges can be resolved prior to deposition in anticipation of such privileges being raised during the deposition." (Doc. 109 at 4–5 (citing *Pence*, 323 F.R.D. at 187).) The Court acknowledges that "there are exceptional circumstances where such arguments may be resolved in advance of the deposition," including when "the deponent [is] in prison, [is] proceeding pro se, [is] not easily deposed, and [has personally] made the request for the determination in advance[]." *See Sec. & Exch. Comm'n v. Conway*, No. 22-mc-0212 DDD/KAS, 2024 WL 4252821, at *8 (D. Colo. Sept. 19, 2024) (discussing *Pence*, 323 F.R.D. at 187). No such exceptional circumstances, however, are present here. Consequently, the Court finds that resolving this issue in advance of Gabaldon's deposition is unnecessary. *See, e.g., Gonzales*, 2003 WL 27383580, at *3 ("the proper method to assert such a privilege is for the deponent to appear at the deposition, truthfully answer those questions that do not implicate a privilege, and assert the privilege in response to specific questions").

Finally, the Court finds it premature to grant Higgins's request for an adverse inference jury instruction based on Gabaldon's planned invocation of his Fifth Amendment privilege. (*See* Doc. 109 at 8.) Higgins provides no authority to show that an adverse inference jury instruction is

4

appropriate where the privilege is invoked at a deposition. (*See id.*) *See also T.R. v. Howard*, No. 20-cv-2076 GBW/JHR, 2024 WL 916268, at *3 (D.N.M. Mar. 3, 2024) (noting that "an adverse inference jury instruction is used in civil proceedings when a defendant invokes his Fifth Amendment right to remain silent *during* a civil trial or hearing before a finder of fact, not when [he] has previously . . . invoke[d the] privilege . . . at another point in the civil litigation"); *see also Gonzales*, 2003 WL 27383580, at *4 (noting that an adverse inference instruction might be appropriate if a party asserts the privilege without justification, impacting the party's credibility) (citations omitted). The Court's denial of the request is without prejudice to Higgins's ability to refile it at a more appropriate time.

**IT IS THEREFORE ORDERED** that Gabaldon's Amended Motion for Protective Order (Doc. 108) is **GRANTED**.

**IT IS FURTHER ORDERED** that counsel shall confer no later than **September 16, 2025**, to select a new deposition date.

**IT IS FURTHER ORDERED** that Gabaldon's original Motion for Protective Order (Doc. 104) is **DENIED as moot**.

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE