**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

RACHEL HIGGINS, as personal representative of
the ESTATE OF JOHN T. SANCHEZ,

     *Plaintiff*,

     v.                           No. 1:24-cv-00167-MIS-DLM

BERNALILLO COUNTY BOARD OF
COMMISSIONERS, JASON JONES, in his capacity
as Chief of the Metropolitan Detention Center and in
his individual capacity, STEPHEN GABALDON, in his
capacity as a jailer at the Metropolitan Detention
Center and in his individual capacity,
CORIZON HEALTH OF NEW MEXICO, LLC,
CHS TX, INC., YESCARE CORP.,
and NATASHA BUSTAMANTE,

     *Defendants*.

**MOTION FOR DEFAULT JUDGMENT AGAINST
YESCARE DEFENDANTS AS DISCOVERY SANCTION**

Plaintiff Rachel Higgins, as personal representative of the Estate of John T. Sanchez ("Plaintiff"), by and through her counsel, Harrison & Hart, LLC and Smith & Marjanovic Law, LLC, hereby moves the Court to enter default judgment against defendants Corizon Health of New Mexico, LLC ("Corizon"), CHS TX, Inc. ("CHS TX") and YesCare Corp. ("YesCare") (together, the "YesCare Defendants" or "Defendants") as a sanction for their bad faith discovery negotiations and ongoing refusal to engage in the discovery process in this matter. In accordance with D.N.M. LR-Civ. 7.1(a), Plaintiff requested YesCare Defendants' positions on this motion, and Defendants never responded to Plaintiff's request. As specified in D.N.M. LR-Civ. 7.6(a), Plaintiff respectfully requests oral argument on this motion.

**BACKGROUND**

On September 29, 2025, Plaintiff's counsel propounded a second set of discovery requests on Corizon (*see* Exhibit 1, attached hereto), which consisted of three interrogatories ("Rogs") regarding (1) the reasons for Defendant Bustamante's termination (Rog 16), (2) the date that Defendant Bustamante's email address changed from an @corizon to an @yescare email and the reasons for the change (Rog 17), and (3) whether Mr. Sanchez was on a waitlist for a medical unit bedspace (Rog 18). *See* Exhibit 1 at 1-3.

It also included five requests for production ("RFPs") concerning (1) documents related to the transition from Corizon to YesCare at the Bernalillo County Metropolitan Detention Center ("MDC") and documents specifically referenced by Defendant Bustamante in her deposition, with pin cites to these references (RFP 20); (2) documents related to Defendant Bustamante's corrective action and termination by Corizon and YesCare (RFP 21); (3) metadata for Mr. Sanchez's medical records on the day he died, as Defendant Bustamante testified she entered them after his death and back-dated the entries in her deposition (RFP 22); (4) training documents referenced by the discovery and in Defendant Bustamante's deposition, with pin cite references (RFP 23); and (5) documents concerning Corizon's and YesCare's medical record forms outlining types of medical assessments that should be performed, as explained in Defendant Bustamante's deposition with pin cite references (RFP 24). *See* Exhibit 1 at 3-7.

Finally, it included three requests for admission ("RFAs") (1) that Defendant Bustamante had a work email address containing YesCare (RFA 4), (2) that Defendant Bustamante was terminated due to her interactions with Mr. Sanchez on the day he died (RFA 5), and (3) that YesCare was responsible for providing medical care to MDC prisoners on the day Mr. Sanchez died (RFA 6). *See* Exhibit 1 at 7.

Then, on October 14, 2025, Plaintiff's counsel emailed Corizon's counsel with a proposed Rule 30(b)(6) deposition notice about which to confer and requests for the depositions of seven individual Corizon and YesCare agents. *See* Exhibits 2 and 4, attached hereto. On October 15, 2025, defense counsel for Corizon requested until early the next week to respond to our Rule 30(b)(6) deposition notice, and Plaintiff's counsel obliged. *See* Exhibit 3 at 1, attached hereto.

At defense counsel's request, on October 21, 2025, counsel for the parties conferred on the discovery propounded by Plaintiff. Corizon's counsel represented that the majority of the Rule 30(b)(6) topics were not objectionable to them, nor were most of the second discovery requests. Corizon's counsel represented that they were working on finding the proper designees and would get back to Plaintiff's counsel shortly. However, this never happened, despite Plaintiff's counsel's numerous emails and calls about this issue over the course of months. Additionally, Corizon's counsel stated that they would need a few weeks' extension to respond to Plaintiff's second set of discovery requests, but they never responded within those two weeks, or even within the month. *See* Exhibits 7 and 8, attached hereto.

Throughout the depositions, over the phone, and via email, Plaintiff's counsel spent months and months continually following up with Corizon's counsel to urge Corizon to comply with and engage in discovery. Each time, Corizon's counsel assured Plaintiff's counsel that Corizon just needed a little more time and was actively working on the discovery. However, this could not have been farther from the truth. We know now that Corizon's counsel was misrepresenting the work they were doing on this discovery. *See* Exhibits 3 through 7, attached hereto.

On December 17, 2025, when lead defense counsel for Corizon, Craig Sargent, finally became responsive after not engaging in this case for months, Plaintiff's counsel recirculated the Rule 30(b)(6) depo notice and the second set of discovery. In response, defense counsel said that

he would get to work to address each of these long-outstanding discovery issues. *See* Exhibits 5 through 7.

Then, on December 18, 2025, Corizon's counsel asked for yet another extension on Plaintiff's second set of discovery requests, which had been served in September. Corizon's counsel wanted a full month of additional time to respond—until January 16, 2026. In light of the holidays, and in the mistaken belief that Corizon was attempting to confer in good faith, Plaintiff's counsel permitted the extension. *See* Exhibit 7.

However, January 16, 2026 passed with no response from Corizon and no discovery responses. So, on January 21, 2026, Plaintiff's counsel emailed Corizon's counsel asking why nothing had been produced on Corizon's own self-imposed deadline. *See* Exhibit 7. In response, Corizon's counsel produced a mere two pages of documents—a basic org chart. *See* Exhibit 8, attached hereto. Corizon objected to each interrogatory and RFP—objections that are clearly waived because of its failure to timely respond and to even respond within its own self-imposed time limits. *See* Exhibit 1. Moreover, Corizon never made any objections at any time to Plaintiff's Rule 30(b)(6) deposition notice, and Corizon never circulated a redline of the notice either. *See* Exhibits 3 through 8.

On January 28, 2026, at Plaintiff's counsel's request, counsel for the parties participated in a discovery conference with this Court, wherein the Court ordered Corizon to designate 30(b)(6) designees and participate in the deposition, responding substantively to each of Plaintiff's noticed topics. At this conference, the Court also ordered the parties to submit written motions regarding Plaintiff's second set of discovery requests. The Court stated that it would award sanctions to Plaintiff if it found Corizon's objections in the motion practice unavailing.

Shortly after, on February 6, 2026, Plaintiff propounded Plaintiff's First Set of Requests

for Production to YesCare and CHS TX, along with Plaintiff's Third Set of Requests for Production to Corizon, via email to counsel for these defendants. *See* Exhibit 9. Each set of requests is essentially identical and seeks documents related to the YesCare Defendants' values and assets for the purposes of punitive damages arguments at trial. *See* Exhibits 2-4 of Plaintiff's MTC 1st RFPs to YesCare and CHS TX and 3rd RFPs to Corizon, Dkt. No. 172. Each set of requests explicitly stated that the YesCare Defendants should provide responses within thirty days. *See id.* Thirty days from February 6, 2026 was March 8, 2026, with the next business day being March 9, 2026. However, March 9, 2026 came and passed without any response or correspondence from counsel for the YesCare Defendants about any of these requests. Moreover, as of the date of filing this motion, none of the YesCare Defendants have made any attempt to contact Plaintiff's counsel to address these issues.

## STANDARD OF REVIEW

"Federal R. Civ. P. 37(b)(2)[ ] and 37(d) permit a court to enter a default judgment against a party who fails to obey an order to provide discovery or who fails to respond to interrogatories or requests for production." *F.D.I.C. v. Daily*, 973 F.2d 1525, 1530 (10th Cir. 1992) (affirming default judgment against defendant as a discovery sanction where defendant untimely responded to discovery and failed to produce discovery). The sanction of a default judgment is appropriate "when the failure to comply with discovery demands is the result of wilfullness, bad faith, or some fault of petitioner' rather than inability to comply." *Id*. (internal cites and quotes omitted). "A 'willful failure' is an intentional failure rather than involuntary noncompliance." *Id.* (internal cite omitted). However, "no wrongful intent need be shown." *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1159 (10th Cir. 2013) (affirming default judgment against defendant for his repeated discovery violations) (internal cites and quotes omitted). Additional factors that some courts

5

consider are "whether prior warning was given" and "the efficacy of lesser sanctions." *Williams v. Texaco, Inc.*, 165 B.R. 662, 675 (D.N.M. 1994). However, "[t]hese factors do not constitute a rigid test; rather, they represent criteria for the district court to consider." *Id.*

"A court must determine whether a course of conduct results from mere inattention by counsel or is a deliberate strategy. In making findings on the issue of fault, a court should consider the factors set forth in *Ocelot*." *F.D.I.C. v. Daily*, 973 F.2d at 1531 (citing *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1465 (10th Cir. 1988)). "Those factors include "(1) the degree of actual prejudice to the [opposing party]; (2) the amount of interference with the judicial process; and (3) the culpability of the litigant [who committed the discovery violations]." *Ocelot*, 847 F.2d at 1465 (10th Cir. 1988) (internal cites and quotes omitted)). Dismissal is an appropriate sanction "when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on the merits." *Id.* (internal cites and quotes omitted).

## ARGUMENT

Default judgment against the YesCare Defendants is proper here, because (1) Plaintiff has been severely prejudiced in her ability to litigate this matter by Defendants' bad faith and unlawful discovery tactics; (2) YesCare Defendants' refusal to engage in the discovery process has resulted in substantial interference with the judicial process; and (3) the YesCare Defendants' persistent refusal to engage with the discovery process is plainly a deliberate strategy, as YesCare Defendants declined to provide any response at all to Plaintiff's most recent discovery requests.

In cases like this, where the *Ocelot* factors are present, courts regularly order default judgment against the bad actors like the YesCare Defendants here. *See, e.g., Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153 (10th Cir. 2013) (affirming default judgment against defendant for his repeated discovery violations); *F.D.I.C. v. Daily*, 973 F.2d 1525, 1530 (10th Cir. 1992)

6

(affirming default judgment against defendant as a discovery sanction where defendant untimely responded to discovery and failed to produce discovery); *Norman v. Young*, 422 F.2d 470, 474 (10th Cir. 1970) (affirming default judgment against defendants for willingly failing to produce discovery and emphasizing: "The entry of default judgment was not vindictive but was compelled by defendant's conduct, in order to protect the statutorily-created right of discovery and the constitutionally-guarded due process rights of plaintiff."); *Williams v. Texaco, Inc.*, 165 B.R. 662, 676 (D.N.M. 1994) (finding that the entry of default judgment against defendant with respect to the entire complaint would have been warranted due to defendant's willful refusal to comply with discovery obligations).

Additionally, in cases like the present—where one party persistently refuses to engage in discovery—courts find that sanctions lesser than default judgment are insufficient to cure the prejudice to the opposing party or deter additional misconduct from the non-compliant party. For instance, in *EBI Sec. Corp. v. Hamouth,* the court emphasized:

> I do not believe a lesser sanction than default judgment would cure the prejudice to EBI or deter additional misconduct by the Hamouth Defendants. From the very beginning of this action, the Hamouth Defendants evinced an almost total disregard for United States courts and their rules and procedures. Mr. Hamouth manipulated and imposed on the goodwill of this Court, EBI and its counsel and his own attorneys to delay this action and prevent it from being decided on the merits.

219 F.R.D. 642, 648 (D. Colo. 2004). Like the *Hamouth* defendants, the YesCare Defendants have also imposed on the goodwill of the Court and caused their attorneys to delay the present action to prevent it from being decided on the merits by refusing to meaningfully engage in discovery. YesCare and CHS TX have refused to engage in any discovery whatsoever, and Corizon has only engaged in minimal discovery, wholly refusing to designate Rule 30(b)(6) deponents or respond at all to Plaintiff's most recent discovery requests. No lesser sanction than default would cure the prejudice to Plaintiff in being denied a majority of the discovery to which she is entitled or deter

additional misconduct by the YesCare Defendants—who unapologetically refuse to engage in discovery with no justification.

**I.     As a result of the YesCare Defendants' bad faith and unlawful discovery tactics, Plaintiff has been severely prejudiced in her ability to litigate this matter.**

As the Tenth Circuit explained in *Daily*, the defendant's strategy of delaying discovery had prejudiced plaintiffs "because discovery closed on March 31, 1989, but [plaintiffs] did not have sufficient responses to their discovery requests to enable them to prepare a meritorious summary judgment motion, adequately prepare for trial, or adequately depose witnesses." *F.D.I.C. v. Daily*, 973 F.2d 1525, 1529 (10th Cir. 1992). Likewise, Plaintiff here has been severely prejudiced, because discovery closed on March 9, 2026, but YesCare Defendants have unlawfully withheld substantive responses to Plaintiff's discovery requests so that Plaintiff is prevented from preparing a summary judgment motion, adequately preparing for trial, and adequately deposing witnesses in this case.

This Court has emphasized that a plaintiff is actually prejudiced when defendants' dilatory tactics cause extended discovery periods and evidence defendants' efforts to block plaintiffs' attempts to reach the merits of the case. *See Williams v. Texaco, Inc.*, 165 B.R. 662, 675 (D.N.M. 1994) (holding that plaintiffs had satisfied the prejudice *Ocelot* factor and reasoning: "Plaintiffs have been attempting to discover the same documents for nearly a year. This case has been in the discovery phase for nearly four years. Texaco's conduct during the entire course of discovery evinces an unmistakable effort to block all attempts to reach the merits of this case. Texaco has engaged in a deliberate campaign of delay and abuse. Valid attempts to discover documents in Texaco's possession became monumental efforts exacting inordinate time and cost."). Like the plaintiffs in *Texaco*, Plaintiff's attempts to discover documents in the present case have become

monumental efforts exacting inordinate time and cost, as demonstrated by the countless emails and efforts expended by Plaintiff's counsel. *See* Exhibits 3-7.

YesCare Defendants' repeated refusals to respond to Plaintiff's discovery requests have substantially prejudiced Plaintiff by hindering her ability to file a summary judgment motion, prepare for trial, and depose witnesses in this matter, in addition to causing immense expense and expenditure of unnecessary resources by Plaintiff's counsel.

**II.    The YesCare Defendants' refusal to engage in the discovery process has resulted in substantial interference with the judicial process.**

Both the Tenth Circuit and this Court regularly find that defendants' prolonged refusals to comply with discovery procedures significantly interfere with the judicial process. In *Daily*, the Tenth Circuit observed that defendants' dilatory discovery tactics "significantly interfered with the important role discovery plays in the adversarial system." *F.D.I.C. v. Daily*, 973 F.2d 1525, 1529–30 (10th Cir. 1992). Likewise, the YesCare Defendants' disregard of Plaintiff's discovery requests here has significantly interfered with the importance of discovery to this case. The YesCare Defendants baldly deny accountability here on many grounds, yet they refuse to provide even basic pertinent information requested in discovery by Plaintiff, including the relationship of the YesCare Defendants to each other, the contracts they have their MDC employees sign, basic reference documents for employees to use on the job at MDC, general information about their profits and assets, and the termination documents for Defendant Bustamante. *See* Background Section*, supra*.

Similarly, the District of Colorado found that a plaintiff was "severely prejudiced"—and that the judicial process faced substantial interference—by defendants' failures to comply with discovery, noting that the plaintiff "delayed bringing its motion to compel for months in reliance on the defendants' representations that its discovery responses would be served shortly." *EBI Sec. Corp. v. Hamouth*, 219 F.R.D. 642, 647-48 (D. Colo. 2004). Likewise, Plaintiff here delayed filing

her own discovery motions to compel for months because Corizon, in bad faith, continually stated that it was working on substantively responding—which we now know was a false representation. *See* Exhibits 3-7. The District of Colorado further reasoned that, without the plaintiff's requested discovery, the plaintiff "could not pursue other key discovery, such as taking [defendant's] deposition." *Hamouth*, 219 F.R.D. at 648. Equally here, Plaintiff has been unable to take the YesCare Defendants' Rule 30(b)(6) depositions, because she lacks the discovery documents needed to effectively do so. Moreover, Corizon has been refusing to designate Rule 30(b)(6) deposition designees or confer on Rule 30(b)(6) notice topics since September—nearly seven months. *See* Background Section, *supra*.

As the District of Colorado highlighted: The defendants' disregard of mandatory discovery "inevitably interfered with the judicial process" by hindering the district court's administration of "orderly justice." *Id.* at 648. The YesCare Defendants cannot be permitted to benefit from their obstruction of the judicial process and rejection of Plaintiff's due process rights.

III.    **The YesCare Defendants' persistent refusal to engage in the discovery process is plainly a deliberate strategy, as they have spent nearly seven months simply ignoring numerous discovery requests despite the Court urging them to comply.**

The YesCare Defendants have mounted a months-long campaign of delay and obstruction concerning Plaintiff's lawsuit, which is patently an unlawful and deliberate strategy to "outrun the clock" on discovery and prevent Plaintiff from learning the truth about the YesCare Defendants' roles in Mr. Sanchez's untimely death. *See* Background Section, *supra*. And whether these actions originated from the YesCare Defendants or their legal counsel is of no significance here. Even where "no evidence conclusively indicate[s] whether [a defendant] or his counsel chose to utilize the tactics employed in the case," the Tenth Circuit has affirmed that the defendant is bound by his counsel's actions, "because counsel's actions were the result of a tactical decision for [the

10

defendant's] benefit." *Daily*, 973 F.2d at 1530.

Additionally, the Tenth Circuit affirmed that less severe sanctions are not proper in the face of defendants' "utter indifference to the process by which litigation is resolved." *Id*. Like the defendants in *Daily,* the YesCare Defendants have exhibited that same utter indifference to the discovery process, which the Tenth Circuit found indicative of a deliberate, unlawful strategy to evade discovery. Defendants YesCare and CHX TX refused to engage in any discovery at all, and Corizon only engaged in minimal discovery, only responding with two pages of discovery to Plaintiff's second set of RFPs and refusing to respond at all to Plaintiff's third set of RFPs. These actions perfectly represent the "utter indifference" to which the Tenth Circuit referenced in *Daily*. *See id.*

This Court, too, previously found that a defendant was engaging in a deliberate strategy of thwarting discovery, because the defendant "refused to produce even those documents not subject to its objections." *Texaco*, 165 B.R. at 676. The District of Colorado held likewise when it found that defendants had acted with willful bad faith because of their "dilatory and uncooperative conduct throughout th[e] action" and their failures to produce the documents requested, seek an extension, or offer any explanation. *Hamouth*, 219 F.R.D. at 647. Similarly here, the YesCare Defendants have refused to produce documents responsive to discovery requests to which they have not objected. The YesCare Defendants have also failed to produce the documents requested by Plaintiff, failed to seek an extension to produce these documents, and failed to offer any explanation for this unlawful conduct. The YesCare Defendants' intentions are clear—to prevent Plaintiff from litigating this case and therefore escape accountability for their roles in causing Mr. Sanchez's death.

As this Court has previously emphasized: "The ability of the Court to sanction parties for willful failure to obey discovery orders is an integral component of pretrial discovery." *Texaco,* 165 B.R. at 676. The Court should exercise this integral component of pretrial discovery against the YesCare Defendants in the present case and enter default judgment against them here.

**CONCLUSION**

As described above, the three *Ocelot* aggravating factors far outweigh the judicial system's general preference to resolve cases on the merits, and consequently, Plaintiff respectfully requests that this Court (1) issue findings that the YesCare Defendants have been willfully non-compliant with discovery practice in this matter; (2) enter default judgment against the YesCare Defendants as a sanction for their bad faith discovery tactics; and (3) grant any such further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Elise C. Funke*
Elise C. Funke
Nicholas T. Hart
**HARRISON & HART, LLC**
924 Park Ave SW, Suite E
Albuquerque, NM 87102
(505) 295-3261
elise@harrisonhartlaw.com
nick@harrisonhartlaw.com

-and-

12

Taylor E. Smith
Griffin Arellano
**SMITH & MARJANOVIC LAW, LLC**
122 Wellesley Dr SE
Albuquerque, NM 87106
Tel: (505) 510-4440
Fax: (505) 557-1163
taylor@legalhelpnm.com
griffin@legalhelpnm.com

*Counsel for Rachel Higgins in her capacity as the Personal Representative for the Estate of John T. Sanchez*


## CERTIFICATE OF SERVICE

I hereby certify that, on March 23, 2026, I electronically filed the foregoing with the United States District Court for the District of New Mexico's CM/ECF system, causing a copy of it to be served on all counsel of record.

HARRISON & HART, LLC

By:  /s/ *Elise C. Funke*
Elise C. Funke

13